MARVIN CROSS AND MARTHA CROSS

*v.*

W. MERLE WATKINS, *Judge of the Circuit Court of Barbour County, West Virginia*

(No. 10779)

Submitted November 8, 1955. Decided November 22, 1955.

BROWNING AND HAYMOND, JUDGES, dissenting.

*Dayton R. Stemple, Carol Nutter,* for relators.

*E. Wayne Talbott,* for respondent, The City of Belington, a Municipal Corporation.

LOVINS, PRESIDENT:

The City of Belington instituted a proceeding in condemnation, seeking to acquire a 132.28 acre tract of land belonging to Marvin Cross and Martha Cross, for the purpose of constructing a dam and impounding water incident to the installation of a water works system for the City.

At the commencement of the proceeding, the land owners denied the right of the city to exercise the power of eminent domain by a plea in abatement and certain special pleas.

It suffices to say that such proceedings were had on the petition of the city, the plea in abatement and the special pleas. The Circuit Court of Barbour County found that the city was entitled to exercise the power of eminent domain for the purpose set forth in the petition.

Pursuant to such finding, the Circuit Court of that county appointed five commissioners on the 14th day of September, 1955, to ascertain what would be a just compensation for the land sought to be taken as well

as damages to the residue beyond all benefits to be derived in respect to the residue from the waterworks system to be constructed.

After taking of testimony, the commissioners retired to a room to consider their report. They returned a writing in which the amount of compensation to the land owners was fixed at $15,000.00.

The writing was signed by the five commissioners in the presence of counsel for the City of Belington and the land owners. The paper so signed was delivered to the attorney for the City of Belington to be filed by him in the office of the Clerk of the Circuit Court of Barbour County, and thereupon, the commissioners adjourned.

After the signing of the paper above mentioned, two of the commissioners conferred with counsel for the City of Belington and stated that they desired to correct the first paper and requested that the Judge of the Circuit Court fix another date for a hearing in vacation, and that the paper dated September 14th, 1955 be rejected as a report. They also requested that new commissioners be appointed to fix compensation to the land owners.

A writing marked a "supplemental report" was prepared by counsel for the City of Belington. Two of the commissioners who had signed the first paper, signed such "supplemental report" and taking the paper, went to the home of a third commissioner who, after discussion, signed the "supplemental report". Thereafter, the three persons went to the homes of the other two commissioners and procured their signatures to the "supplemental report". Later the commissioners, or someone acting for them, mailed the writing dated September 14, 1955 and September 15th, 1955 to the Honorable W. Merle Watkins, Judge of the Circuit Court of Barbour County.

Counsel for the land owners having received a copy of a letter and a copy of the paper marked "supple-

mental report", filed a written motion with the Judge of the Circuit Court of Barbour County to have the paper dated September 14, 1955 filed in the Clerk's Office of such Circuit Court and to reject the writing entitled "supplemental report".

The Judge of the Circuit Court of Barbour County, on the 5th day of October, 1955, on his own motion, entered an order wherein the tender of the two writings above mentioned was recited. Neither paper was filed in the Office of the Clerk of the Circuit Court of Barbour County, as required by statute. The order further recites that the commissioners evidently misapprehended the manner in which their duties were to be performed. The order directed that the commissioners theretofore selected reconvene at 10 o'clock A.M. on the 14th day of October, 1955, in the Circuit Court Room of Barbour County at Philippi, West Virginia, and without hearing any further testimony or arguments of counsel, the said commissioners retire to a jury room of said court to reconsider "* * * what will be a just compensation for the 132.28 acres of land belonging to Marvin Cross and Martha Cross * * *". The commissioners were further directed by the order to base their findings upon the view they had theretofore had of the land, and testimony theretofore given as to the market value of the land and further directed that the commissioners disregard any other information coming to their attention or which may be communicated to them; and that they refrain from discussing the matter before them with interested persons or attorneys for such parties.

In the meanwhile, the petitioners applied for a rule in prohibition prohibiting the Judge of the Circuit Court of Barbour County from reconvening the commissioners, pursuant to the order entered on the 5th day of October, 1955, and requiring the Judge to file the writing now in his hands signed by the commissioners dated the 14th day of September, 1955 in the office of the Clerk of the Circuit Court of Barbour County.

It seems however that before the rule issued by this Court was served on respondent, the commissioners met and obeyed the order made on the 5th day of October by signing a third writing. The paper dated October 14th has not been filed in the Office of the Clerk of the Circuit Court of Barbour County, as is likewise required by statute.

The first paper writing purported to fix $15,000.00 as a just compensation to the land owners. The paper marked "supplemental report" showed the sum of $7,000.00 as being just compensation to the land owners. The paper prepared on the 14th day of October, 1955 fixed the amount of $7,000.00 as such compensation.

It is stated in the return of the respondent judge that the commissioners derived information from some unknown source that the City of Belington had offered the land owners the sum of $15,000.00 as just compensation for the taking of their land, and damages to the residue beyond special benefits to be derived from the work to be constructed. Later the counsel for the City of Belington informed them that no such offer had been made. Hence the activities of the commissioners in filing the paper entitled "supplemental report".

Marvin and Martha Cross contend that the first paper bearing date September 14, 1955 is the true report of the commissioners and having been made more than ten days prior to exception, is not now subject to exception.

An analysis of Code, 54-2-11 hereinafter quoted confers on the Judge of a Circuit Court or the Judge thereof in vacation the power to set aside or recommit to the same commisisoners a defective or erroneous report with or without further notice.

We treat the two papers dated September 14th and September 15th as constituting an erroneous or defective report on its face. There is a wide difference between the amount stated in the first paper and that in the second paper.

Moreover, when we consider the third paper signed by the commissioners pursuant to the Courts' order of October 5th, we think that added another defect to the report in that the commissioners acted on the information derived from an unknown source and acted on information given them by counsel for the condemnors. We thus have three papers ostensibly constituting a report of the commissioners, the first of which the commissioners disavowed because of the information obtained by counsel for the condemnors. The third paper writing coincides with the supplemental report and is manifestly based on the information as noted above. This is unusual and constitutes a grave irregularity, but in entering the order of October 5, 1955, the Judge of the Circuit Court of Barbour County did not exceed the legitimate powers conferred on him by Code, 54-2-11. True, he acted without notice and in vacation, but such action is authorized by the words of the statute.

We think it is necessary to consider all three papers as constituting an erroneous report.

In addition to what has been stated, the appointment and rendition of a report of the commissioners in a proceeding in eminent domain is preliminary in character and is subject to correction upon exceptions to such report and the demand of a trial by a jury of freeholders as required by Article III, Section 9 of the Constitution of this State.

The respondent contends that acting under Code, 54-2-11, he has not exceeded his jurisdiction or acted beyond his legitimate power. The statute so relied on reads as follows:

> "If good cause be shown against the report, or if it be defective or erroneous on its face, the court or judge thereof in vacation, as may seem to be proper, may set it aside or recommit it to the same commissioners for further report; or other commissioners may be appointed in the manner hereinbefore provided, with or without further notice, as the court or judge may order.

> If the commissioners report their disagreement, or fail to report in reasonable time, other commissioners may in like manner be appointed. And so again, from time to time, as often as may be necessary."

It is to be noted that by Chapter 28, Section 9, Acts of the Legislature, 1933, Regular Session, the form of a commissioners' report is set forth. Section 9, id., further provides that the reports shall be signed by at least three of the commissioners and forthwith returned to the clerk's office of the court to be filed with the papers of the case.

Code, 54-2-10 provides that after the report is returned and filed, either party may file exception thereto within ten days, and demand that the question of compensation to be paid be ascertained by a jury of freeholders. Thereupon, the cause is to be tried as other causes. But, if no exception is filed and the report is not defective or erroneous on its face, the court shall affirm such report and order it to be recorded in the proper record book of the court appointing the commissioners. The return of the respondent judge alleges that as such judge he has jurisdiction of the proceeding in eminent domain, and denies that he has acted in excess of his legitimate power under the provisions of Section 11 above quoted.

Undoubtedly Code, 54-1-1 and Code, 54-2-1, when read with Chapter 59, Section 2, sub-section (d), Acts of the Legislature, 1949, Regular Session, confer jurisdiction on the Circuit Court of the county wherein the land lies or the judge thereof in vacation.

This land, according to the record, lies in Barbour County. The Circuit Court of that county, or the Judge of such Court in vacation, when proper for him to act, has jurisdiction of a proceeding to subject lands to condemnation for public use.

The question remains whether the judge in acting as above stated, having jurisdiction of the condemnation proceeding, exceeded his legitimate power.

From the foregoing, we reach the conclusion that it is not shown that the order of the judge is without jurisdiction of the condemnation proceeding or that he has exceeded, or is about to exceed, his legitimate power, and that the writ of prohibition should be denied. *State* v. *Easley,* 129 W. Va. 410, 40 S. E. 2d 827.

The denial of the writ of prohibition shall not be taken nor construed as an approval of proceedings relative to the report of the commissioners in a condemnation proceeding. On the contrary, we disapprove the proceedings in this instance.

The City of Belington has filed a written motion requesting that it be made a party to this proceeding. The conclusions we have reached, as stated above, render it unnecessary to pass on that motion since the writ is denied. Though if the writ had not been awarded under the rule announced in *Kump* v. *McDonald,* 64 W. Va. 323, 61 S. E. 309, and *United States Steel Corporation* v. *Stokes,* 138 W. Va. 506, 76 S. E. 2d 474, it would have been necessary to make the City a party to the writ. See *State* v. *Blankenship,* 93 W. Va. 273, 116 S. E. 524.

*Rule discharged; writ denied.*

BROWNING, JUDGE, dissenting:

I dissent. The first and second syllabus points correctly state the law applicable to this proceeding, but, in my opinion, the third syllabus point states an entirely erroneous principle of law. The respondent has jurisdiction of proceedings in eminent domain arising in his circuit, including this one, but he has clearly exceeded his legitimate power by the action taken herein, as shown by the petition and the return.

The respondent relies upon the provisions of Code, 54-2-11, to confer upon him authority for his actions herein, as does this Court as evidenced by the majority opinion. Two other sections of Chapter 54 must be considered, and the pertinent portions of all three are quoted in their

proper order. Code, 54-2-9, as amended by Chapter 28, Section 9, Acts of the Legislature, Regular Session, 1933, provides that: "* * * The report shall be signed by at least three of the commissioners, and forthwith returned to the clerk's office of the court, to be filed with the papers of the case." Section 10 provides that: "Within ten days after such report is returned and filed as aforesaid either party may file exceptions thereto, * * *." Section 11 provides that: "If good cause be shown against the report, or if it be defective or erroneous on its face, the court or judge thereof in vacation, as may seem to be proper, may set aside or recommit it to the same commissioners for further report; or other commissioners may be appointed in the manner hereinbefore provided, with or without further notice, as the court or judge may order. If the commissioners report their disagreement, or fail to report in reasonable time, other commissioners may in like manner be appointed. And so again, from time to time, as often as may be necessary." When read together, it is obvious that the power exercised was not conferred upon the respondent by Code, 54-2-11, until the mandatory provisions of Code, 54-2-9, as amended, requiring the "forthwith" filing of the report of September 14, 1955, had been complied with. "Good cause" cannot be shown against a report, nor can it be determined whether such report is "defective or erroneous on its face" until it has been filed. The plain unambiguous language of Section 9 provides that the report shall be forthwith filed in the office of the Clerk of the Circuit Court of the county in which the proceeding is pending. The mailing of the report to the Judge of the Circuit Court of such county is not even a substantial compliance with that requirement.

The relators, the landowners, had resisted the condemnation proceeding from the time it was instituted. They had employed counsel for that purpose, and filed a plea in abatement and special pleas. They had appeared before the commissioners when evidence was taken. Thereafter, they have been excluded from participation

in the proceeding to take their land. Unless there is inherent, constitutional or valid statutory authority for such action, their property is being taken without due process of law. Only Code, 54-2-11, is relied upon for such authority. In the majority opinion, the Court said: "An analysis of Code, 54-2-11 hereinafter quoted confers on the Judge of a Circuit Court or the Judge thereof in vacation the power to set aside or recommit to the same commissioners a defective or erroneous report with or without further notice." Even if the filing of the report was not mandatorily precedent to any further action by respondent, Code, 54-2-11, confers no such power upon respondent as the majority opinion delegates to him. At the risk of repetition, the first sentence of Section 11 is again quoted: "If good cause be shown against the report, or if it be defective or erroneous on its face, the court or judge thereof in vacation, as may seem to be proper, may set aside or recommit it to the same commissioners for further report; or other commissioners may be appointed in the manner hereinbefore provided, with or without further notice, as the court or judge may order." It will be observed that this sentence is divided by a semicolon. First, authority is given for the court or judge thereof to set aside or recommit the report to the same commissioners for further report if good cause be shown against the report, or if it be defective or erroneous upon its face. Following the semicolon is the provision that: "or other commissioners may be appointed in the manner hereinbefore provided, with or without further notice, * * * ."

In the case of *McLeod* v. *Nagle, Comm.*, 48 F. 2d. 189, a deportation proceeding was based upon the fact that McLeod, an alien, had been convicted of a felony previous to his entry into the United States. The statute involved (T8 §155, 39 Stat. 889, §19) reads in part as follows: "That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who * * *.", there follows several clauses involving anarchy, becoming

a public charge, of prostitution, et cetera, each set off by a semicolon, then "any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; * * * ." McLeod admitted the conviction, but contended that the order of deportation was void, inasmuch as the proceeding was not instituted within five years. The court, in holding the five year limitation did not apply to the clauses separated from the initial phrase by semicolon, had this to say: "The Oxford Dictionary, after defining a semicolon, says that it is used for 'marking off a series of sentences or clauses of co-ordinate value.' * * * According to this statement of usage every clause separated by a semicolon in the section under consideration is co-ordinate with each of the others, and therefore must each be read separately with the verb * * *. Under this construction the beginning phrase, 'at any time within five years', cannot be carried over to each of the succeeding clauses; each of the latter must be modified only by the time limit specifically stated therein, and, if no time limit is expressed, then the section must be interpreted to mean 'at any time after the entry of the alien into the United States.' * * * 'Again, Ward's Sentence and Theme' * * * at page 331 says the semicolon 'shows that two sentences, each of which could stand alone, have been combined into one sentence'; and continues 'a semicolon is used to show that what follows is *grammatically independent,* though closely related in thought.' "

"From the point of view of strict grammatical construction, therefore, it is evident that, since the semicolon has been used to set off the various subdivisions of the section, the initial phrase, 'within five years after entry', cannot be presumed to carry over into the subsequent clauses that are separated from the initial clause by a semicolon. * * *"

Conversely, the writer of this dissent is of the opinion that, in the instant case, the words "with or without

notice" in the second clause of the sentence cannot revert back. "In the manner hereinbefore provided" has reference to Code, 54-2-6, not to the part of Section 11 which precedes the semicolon. The language "with or without notice" refers to the appointment of other commissioners, under Code, 54-2-6, and obviously does not confer upon the "Judge of a Circuit Court or the Judge thereof on vacation the power to set aside or recommit to the same commissioners a defective or erroneous report with or without further notice.", as stated in the majority opinion. Such a fallacious conclusion, as to the meaning of Section 11, can be arrived at only by disregarding the plain language thereof, as well as the elementary principles of statutory and grammatical construction.

It is not contended by the return, or in argument or brief, that the report of September 14, 1955, is not in proper statutory form. The third syllabus point in *State Road Commission of West Virginia* v. *Georgia McMurray,* 103 W. Va. 346, 137 S. E. 530, states: "The rule that the finding of commissioners appointed in eminent domain proceedings to assess damages is not to be disturbed unless good cause be shown against it by clear proof, applies where the error complained of does not appear upon the face of the report." To show good cause against such a report, when it is not erroneous or defective on its face, requires evidence adduced in the courtroom of the judge's chambers with all litigants having an opportunity to be present.

The action taken by the respondent in the condemnation proceeding, subsequent to the filing of the petition in this Court, seeking a rule in prohibition, and prior to the service of the rule upon respondent, raises a question as to whether prohibition is the proper remedy. However, such action in regard to the second and third papers referred to in the majority opinion, before the original report of the commissioners was filed, and which has not yet been filed, was not only palpably and plainly erroneous, but was also clearly in excess of his legitimate

power, and for that reason prohibition lies. Mandamus to require the respondent to file the original report in the clerk's office might have been the more appropriate remedy. The relators could have proceeded in both prohibition and mandamus. However, I would award the writ prayed for herein, prohibiting the respondent from filing in the clerk's office any of the reports except the original report of September 14, 1955, or taking any other action in the case until that report was filed. If the report was not subsequently filed, mandamus would lie to require such action.

I am authorized to state that Judge Haymond joins in this dissent.